CARL LARSON *vs.* RALPH P. SYLVESTER.

Middlesex.     February 7, 1933. — March 29, 1933.

Present: RUGG, C.J., CROSBY, WAIT, DONAHUE, & LUMMUS, JJ.

*Equity Pleading and Practice*, Exceptions, Decree, Appeal. *Contract*, What constitutes, With trustee. *Trust*, Personal liability of trustee. *Practice, Civil*, New trial.

Under G. L. (Ter. Ed.) c. 214, § 25A, it was proper to enter a final decree in a suit in equity in accordance with the finding of a jury upon an issue framed for trial by jury, although there then had not been final disposition of a bill of exceptions saved at that trial.

The trustee of a trust established by a declaration of trust in writing, the beneficial interest under which was divided into transferable shares, could be held liable personally in a suit in equity to establish a claim for labor and materials furnished by the plaintiff upon property which the defendant held as trustee if the defendant had not stipulated with the plaintiff that the plaintiff was not to look to the defendant personally for payment but only to the property of the trust, although the plaintiff knew that the defendant was acting as trustee and not personally and although the trust as an entity could have been sued at law by the plaintiff under G. L. (Ter. Ed.) c. 182, §§ 1, 6.

Said statute making possible an action at law against the trust did not create a presumption that the plaintiff accepted the trust, rather than the trustee, as the party liable.

Evidence, that, in the absence of the plaintiff above mentioned, his son, who was left in charge of his business, undertook work for which compensation was claimed; that the plaintiff on his return spoke with the defendant, who told him he was having such work done because a tenant wanted it done; and that the plaintiff kept on and finished the job, warranted an inference that the defendant had ordered the work and was sufficient to entitle the plaintiff to recover therefor.

BILL IN EQUITY, filed in the Superior Court with a common law writ dated October 30, 1929, against Ralph P. Sylvester and Ella J. Langley, to reach property of the defendant Sylvester not attachable at law and apply it to the satisfaction of a claim for labor and materials.

An issue as to the amount owed by the defendant Sylvester to the plaintiff was framed for trial by jury. The issue was tried before *Beaudreau,* J. Material evidence and portions of the judge's charge to the jury are stated in the opinion. The jury found for the plaintiff in the sum of $1,912.09. The defendant Sylvester alleged exceptions. By order of *Broadhurst,* J., there were entered an interlocutory decree dismissing the bill as against the defendant Langley, the defendant Sylvester having filed a bond to dissolve an attachment; and a final decree ordering the issuance of execution against the defendant Sylvester for the amount found by the jury to be due from him to the plaintiff. That defendant appealed.

The defendant Sylvester's contention in his brief before this court with regard to the item under date of "Feb. 15, 1929," mentioned in the opinion, was as follows: The "plaintiff testified about this item . . . [and] says that

he had no conversation with the defendant about this job; that he was away at the' time the work was started. . . . The plaintiff's son did not testify in regard to this item. On this state of the evidence, there was nothing upon which to base a finding that the defendant personally or otherwise ordered this work done, or agreed to pay for the same. To allow the plaintiff recovery for this item would be a recovery based on pure speculation. . . . [There was] no direct testimony, nor any evidence from which a reasonable inference can be drawn, that the defendant ordered this item, or asked to have any such work performed. There is no evidence that the defendant ratified the doing of the work after it had been done, or agreed to pay for it. The court in its charge referred to this item twice. The first reference . . . is as follows: 'I believe this particular feature of this count is denied by the defendant in that he did not order the work, and the plaintiff, I believe, said it was done at the request of his son, or at least he went there, or something to that effect.' The second reference occurs . . . where the court says: '. . . and likewise the other repairs amounting to, I believe, $494 and some cents, which he says were made at the request of the defendant but which the defendant denies having requested, and the plaintiff testified, I believe, that he was out of town and his son undertook to do the work . . . .' In both of these references to this item we have inaccurate statements by the court to the jury. The first one that the plaintiff claimed the work was done at the request of his son, and the second that the defendant claimed the items of $494 were all disputed on the same ground. While, of course, the evidence is for the jury and not for the court, such inaccurate statements might easily confuse a juror's mind, and certainly in no way leave the issue raised by the defendant's request clearly to the jury. The defendant was entitled to have the court instruct clearly on the issue involved in this count of the plaintiff's bill. No part of the charge to the jury properly discussed the questions raised by the defendant in regard to these items, and since the plaintiff failed to produce positive evidence to sustain his

burden of proof or failed to produce evidence from which the jury could reasonably infer liability, this part of the plaintiff's case fell and the defendant's request should have been granted."

*C. S. Walkup, Jr.,* (*J. B. Sly* with him,) for the defendant.

*A. M. McDonough,* for the plaintiff.

WAIT, J. This is a bill in equity to reach an interest, not attachable at law, alleged to belong to the defendant Sylvester, and to apply it in payment of debts alleged to be due from him, $494.15 for work performed and materials furnished in the nature of extra work, and $1,200, a balance upon contracts for painting certain houses at Winchester. An issue framed for a jury, "How much money, if any, does the defendant, Ralph P. Sylvester owe the plaintiff?" was answered: "$1,912.09." Exceptions were claimed at the trial of the issue to the judge's refusal to give certain instructions and to portions of his charge. Motion for new trial was denied and exception claimed thereto. The bill alleging the exceptions was allowed on November 21, 1932. Before that day the court, on the plaintiff's motion, ordered a final decree adjudging Sylvester indebted to the plaintiff in $1,912.09 with interest from the date of the verdict and authorizing execution to issue therefor with costs. Sylvester had given bond to dissolve any attachment, and interlocutory decree entered dismissing the bill against the other defendant. Final decree was entered on November 30, 1931. The defendant appealed. Appeal and bill of exceptions are before us.

The defendant's contention that there was error in the entry of final decree before final disposition of the bill of exceptions is not sound. St. 1926, c. 177, now G. L. (Ter. Ed.) c. 214, § 25A, regulated the practice in this respect by enacting that "In suits in equity a final decree shall be entered although exceptions have been taken or a bill of exceptions has been filed and allowed, but execution and operation of the decree so entered shall be stayed until the exceptions have been disposed of unless the judge who made the ruling to which the exception or exceptions were

taken finds that the exceptions are immaterial, frivolous or intended for delay." This language is imperative. It contains no suggestion that it is not applicable to exceptions taken at a trial of issues sent by an equity court to be tried by a jury sitting in a law session. The statute, entitled "An Act regulating practice as to exceptions in suits in equity," was, manifestly, intended to settle the matter by the use of language applicable to exceptions, wherever claimed, which might, but for the act, delay the entry of final decree. Nothing in *Witherington* v. *Eldredge*, 264 Mass. 166, supports a different conclusion. The appeal is not well taken.

The evidence at the trial of the issue was conflicting on the question whether the plaintiff had contracted with Sylvester as trustee of the Winchester Building Trust, a trust established under a written declaration, the beneficial interest under which was divided into transferable shares, looking to the trust as the responsible party, or with him in his individual capacity and on his personal responsibility. There was evidence that the buildings in reference to which the contracts were made and the work and labor were furnished were held by Sylvester as trustee of the Winchester Building Trust. The defendant requested that the judge instruct the jury: "3. If the jury shall find as a fact that the defendant acted as trustee of the Winchester Building Trust in connection with the claims set forth in the plaintiff's bill of complaint and not individually and that the plaintiff knew or reasonably should have known this fact, he is not liable and the jury's finding must be that there is nothing due from the defendant to the plaintiff." The judge refused. He instructed the jury: "if a person, who undertakes to act as a trustee in behalf of a trust estate, enters into a contract with a third party, if he doesn't clearly stipulate he is not to be held personally responsible for it, the third party who does business with him can hold him personally responsible, notwithstanding the fact that the trust estate received the benefit and the enjoyment of his work. . . . If you find that this defendant did not stipulate that he was not to be held personally

responsible, that is, if he didn't say something or do something that would exonerate him from personal liability, the plaintiff can recover from him notwithstanding the fact that he says that he was acting in the capacity of trustee, because, as I said a moment ago, a man acting as trustee can be held personally responsible notwithstanding the fact that the work was done for the benefit of the estate unless he stipulates and clearly indicates that he was acting for the trust and not in his individual capacity. But if you find that this plaintiff in dealing with this defendant knew or had cause or reason to know that at the time he entered into the negotiation of these two contracts he was dealing with him as the representative of the trust, or from the nature of their transactions that went along before that this plaintiff knew or should have known that the defendant was not to be held personally, then he cannot recover against him." Later he said: "To repeat very briefly what I have said to you before, if you find that this defendant stipulated that he was not to be bound or not to be liable personally to this plaintiff, then this plaintiff cannot hold him, but if you find from the nature of the transactions that he did not do so, then the plaintiff can hold him personally liable notwithstanding the fact that he did the work for the benefit of the estate." There is no reversible error in the foregoing. The request was not accurate. The instruction covered all that was good in the request. In portions of the charge to which no exception was taken, the judge described such a trust as existed here, and declared that it was not "a fake trust," and by statute could be sued at law. He held the jury to the question of fact, whether the transactions had been such that the defendant was liable personally.

Speaking generally, a trust is not a legal personality. With the exception later to be dealt with, it cannot be sued. It is represented by the trustee. He embodies it. He holds title. He deals with the property in which trust rights exist. Contracts with regard to the rights and property affected by trusts are the contracts of the trustee. He, in person, is liable upon them. He is not acting as repre-

sentative or agent of another. He is acting for himself, but with fiduciary obligations to others. *Magallen* v. *Gomes,* 281 Mass. 383. *Gardiner* v. *Rogers,* 267 Mass. 274, 278. *Philip Carey Co.* v. *Pingree,* 223 Mass. 352. *Mayo* v. *Moritz,* 151 Mass. 481. Compare *Cochrane* v. *Forbes,* 265 Mass. 249, 255, 256; *Hussey* v. *Arnold,* 185 Mass. 202. It differs from a corporation or a partnership. The former is a legal person. The latter, in the law of Massachusetts, is an association of individuals united for transaction of business. The former can be sued as a body corporate in its own name. The latter must be sued, ordinarily, in the names of the partners. Many purposes are served if persons may unite in placing property in the hands of a trustee and allowing him to transact business not as an agent or a partner of theirs but as owner of the property subject only to equitable obligations. The device has been acted upon. Trust instruments appeared dealing with property in equity owned by people, voluntarily associated, whose rights were represented by transferable certificates, but, at law, owned and managed by a trustee or trustees. This court had to pass on their nature and decide whether trusts or partnerships had come into being. *Gleason* v. *McKay,* 134 Mass. 419. *Phillips* v. *Blatchford,* 137 Mass. 510. *Williams* v. *Milton,* 215 Mass. 1. *Frost* v. *Thompson,* 219 Mass. 360. *Priestley* v. *Treasurer & Receiver General,* 230 Mass. 452. In 1909 the Legislature required the trustees of such voluntary associations to file copies of the trust instrument with the commissioner of corporations and with the clerk of the town or city of the usual place of business. St. 1909, c. 441, § 1. In 1916 it authorized bringing suits at law against such a voluntary association. St. 1916, c. 184. We decided in *Bouchard* v. *First People's Trust,* 253 Mass. 351, that the statute did not apply to express trusts as distinguished from voluntary associations; and, by St. 1926, c. 290, § 1, the statute was broadened to include trusts of the character described, with an exception not here material.

The trust here in question was of the character described by the statute, now G. L. (Ter. Ed.) c. 182, §§ 1, 6. The

judge was right in stating that it could be sued at law. The statutes, however, have made no change in the law applicable to the trustee. He is still liable personally; but he can still, as he could before the statutes were enacted, avoid personal responsibility by stipulating or agreeing with the other party that the latter shall look only to the trust property for compensation or for damages for breach of the trustee's agreement and not to the trustee. Save for the purpose of being sued, the trust, as distinguished from the trustee, is not made a separate legal entity; and only the peculiar trusts organized under a written instrument with beneficial interests divided into transferable certificates of participation or shares are suable at law. That a trustee can exempt himself from personal liability by stipulation or agreement is well established, *Shoe & Leather National Bank* v. *Dix*, 123 Mass. 148, *Carr* v. *Leahy*, 217 Mass. 438, *Neville* v. *Gifford*, 242 Mass. 124; but a signature as "trustee" or a description of himself as "trustee" does not constitute such an agreement. *Philip Carey Co.* v. *Pingree*, 223 Mass. 352. The law is well summarized in *Carr* v. *Leahy*, 217 Mass. 438. See also *Hussey* v. *Arnold*, 185 Mass. 202. Thus the facts that Sylvester was acting as trustee of the Winchester Building Trust and not individually and that the plaintiff knew it would not relieve him of liability. There must have been an agreement that he should not be liable personally in order to confine the plaintiff to recourse against the trust. Mere knowledge that the defendant was acting as trustee would not be enough to bind the plaintiff to an agreement that the defendant should not be personally liable.

We need not consider how far the foregoing is modified by the negotiable instrument act, G. L. (Ter. Ed.) c. 107, § 42, *Baker* v. *James*, 280 Mass. 43, because no negotiable instrument is present in this case. Here it was a question of fact whether there had been such occurrences that the jurors would find that Sylvester had exempted himself. Nothing in the charge prejudiced a finding in the defendant's favor, if the facts, as they found them, justified it. The statute making possible suit against the trust did not

create a presumption that the plaintiff accepted the trust, rather than the trustee, as the party liable.

There was evidence that, while the plaintiff was absent, his son, who was left in charge of his business, undertook work for which compensation was claimed in an item under date of "Feb. 15, 1929," in the bill of complaint. There was evidence that on his return he spoke with Sylvester who told him he was doing it because a tenant wanted it done; and that the plaintiff kept on and finished the job. This would, we think, sustain an inference that Sylvester had ordered the work. It was some evidence in support of the claim. The judge was not bound to give the instruction requested that no recovery was permissible under this item. Nor can we say the jury was misled by what was stated in the charge with reference to this item.

The defendant based his motion for new trial on the grounds that the verdict was against the law and the evidence, was against the weight of the evidence, was excessive in amount, was erroneous in law and shows that it was based either upon a misunderstanding of the law or of the evidence or both. It was denied and exception was claimed. He argues that the amount demonstrates error. The decision rested in the judicial discretion of the trial judge. We see no abuse of discretion, and in the damages awarded no clear proof of error in the application of the rules of law to facts which the jury could find. *Malden Trust Co.* v. *Perlmuter*, 278 Mass. 259.

*Exceptions overruled.*
*Decree affirmed with costs.*